**RECORD NO. 22-1971**

In The

# United States Court of Appeals
For The Fourth Circuit

**JACOB DOE,**

*Plaintiff – Appellant*,

v.

**VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY; TIMOTHY DAVID SANDS, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; FRANK SHUSHOK, JR., employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; KATIE POLIDORO, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; ENNIS MCCRERY, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; KYLE ROSE, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; ROHSAAN SETTLE, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; KELLY OAKS, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; ANGELA SIMMONS, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally,**

*Defendants – Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA AT ROANOKE

_____

**BRIEF OF APPELLANT**

_____

Benjamin F. North
BINNALL LAW GROUP
717 King Street, Suite 300
Alexandria, Virginia 22314
(703) 888-1943

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1971__    Caption: __Jacob Doe v. Virginia Polytechnic Institute and State University et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Jacob Doe_____
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Benjamin North                          Date:          09/28/2022

Counsel for: Appellant Jacob Doe

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................ii

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUES................................................................... 2

STATEMENT OF CASE ..................................................................... 3

SUMMARY OF ARGUMENT ............................................................. 8

ARGUMENT ..................................................................................... 11

    I.     Standard of Review ............................................................ 11

    II.    Doe stated protected liberty and property interests ........... 11

           a.     Doe alleged a protected liberty interest ...................... 12

           b.     Doe alleged a protected property interest ................... 22

    III.    Doe was not provided adequate notice and a meaningful opportunity to be heard.......................................................... 27

CONCLUSION ................................................................................... 34

REQUEST FOR ORAL ARGUMENT................................................. 35

CERTIFICATE OF COMPLIANCE...................................................... 36

CERTIFICATE OF FILING AND SERVICE ........................................ 37

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bd. of Regents of State Colleges v. Roth,*
    408 U.S. 564 (1972) ................................................................ 15, 22

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................ 9, 11, 26

*Benjamin v. Sparks,*
    986 F.3d 332 (4th Cir. 2021) ......................................................... 11

*Bonds v. Leavitt,*
    629 F.3d 369 (4th Cir. 2011) ......................................................... 11

*Chao v. Rivendell Woods, Inc.,*
    415 F.3d 342 (4th Cir. 2005). ........................................................ 24

*Dixon v. Alabama State Bd. of Ed.,*
    294 F.2d 150 (5th Cir. 1961) ................................................. *passim*

*Doe v. Alger,*
    175 F. Supp. 3d 646 (W.D. Va. 2016) .................................... *passim*

*Doe v. Alger,*
    228 F. Supp. 3d 713 (W.D. Va. 2016) ................................ 23, 24, 25

*Doe v. Baum,*
    903 F.3d 575 (6th Cir. 2018) ................................................... 29, 32

*Doe v. Purdue Univ.,*
    928 F.3d 652 (7th Cir. 2019) ................................................. *passim*

*Doe v. Rector & Visitors of George Mason Univ.,*
    132 F. Supp. 3d 712 (E.D. Va. 2015) ..................................... *passim*

*Doe v. Rector & Visitors of George Mason Univ.*,
　149 F. Supp. 3d 602 (E.D. Va. 2016) ................................... 9, 30, 31

*Doe v. Univ. of Arkansas - Fayetteville*,
　974 F.3d 858 (8th Cir. 2020) ......................................... 20

*Doe v. Univ. of Cincinnati*,
　872 F.3d 393 (6th Cir. 2017) ......................................... 20

*Doe v. Univ. of Connecticut*,
　No. 3:20CV92 (MPS),
　2020 WL 406356 (D. Conn. Jan. 23, 2020) ................................... 32

*Goss v. Lopez*,
　419 U.S. 565 (1975) ............................................. *passim*

*Haidak v. Univ. of Massachusetts-Amherst*,
　933 F.3d 56 (1st Cir. 2019) ............................................. 32

*Henson v. Honor Comm. Of U. Va.*,
　719 F.2d 69 (4th Cir. 1983) ........................................ 27, 28, 30, 32

*Kartseva v. Dep't of State*,
　37 F.3d 1524 (D.C. Cir. 1994) ........................................ 17

*Mathews v. Eldridge*,
　424 U.S. 319 (1976) ......................................... 28, 29, 31

*Morrissey v. Brewer*,
　408 U.S. 471 (1972) ...................................... 27

*Overdam v. Texas A&M Univ.*,
　43 F.4th 522 (5th Cir. 2022) ................................... 18, 20

*Paul v. Davis*,
　424 U.S. 693 (1976) ............................................. *passim*

*Perry v. Sindermann,*
  408 U.S. 593 (1972) ...................................................... 23, 25

*Ridpath v. Bd. of Governors Marshall Univ.,*
  447 F.3d 292 (4th Cir. 2006) .................................... 17, 20

*Sansotta v. Town of Nags Head,*
  724 F.3d 533 (4th Cir. 2013) .......................................... 11

*Shirvinski v. U.S. Coast Guard,*
  No. 1:09-CV-896 AJT TRJ,
  2010 WL 4279254 (E.D. Va. Oct. 25, 2010), *aff'd,*
  673 F.3d 308 (4th Cir. 2012) .................................... 16, 17

*Walsh v. Hodge,*
  975 F.3d 475 (5th Cir. 2020), *cert. denied,*
  141 S. Ct. 1693 (2021) .............................................. 29, 31

*Washington Gas Light Co. v. Virginia Elec. & Power Co.,*
  438 F.2d 248 (4th Cir. 1971) .......................................... 27

## CONSTITUTIONAL PROVISION

U.S. CONST. amend. XIV ...................................................... 8, 9

## STATUTES

28 U.S.C. §1291 .................................................................... 1

28 U.S.C. §1331 .................................................................... 1

42 U.S.C. §1983 .................................................................... 1

## RULES

Fed. R. App. P. 3 .................................................................... 7

Fed. R. Civ. P. 12 ................................................................. 6

Fed. R. Civ. P. 12(b)(6) ....................................................... 11

## REGULATION

34 C.F.R. §106.45(b)(2)(B) .................................................. 31

## OTHER AUTHORITIES

Samantha Harris & KC Johnson, *Campus Courts in Court: The Rise in Judicial Involvement in Campus Sexual Misconduct Adjudications*, 22 N.Y.U. J. Legis. & Pub. Pol'y 49 (2020). ................. 28

*Summary of Major Provisions of the Department of Education's Title IX Final Rule,* Department of Education (May 13, 2020), https://www2.ed.gov/about/offices/list/ocr/docs/titleix-summary.pdf ......................................................................... 29

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction over this case because Jacob Doe asserted, among other claims, violations of the Constitution of the United States of America pursuant to 42 U.S.C. §1983. 28 U.S.C. §1331.

This Court possesses appellate jurisdiction over this case under 28 U.S.C. §1291 because a final order was issued by the district court on August 12, 2022, and a timely Notice of Appeal was filed by Jacob Doe on September 12, 2022.

## STATEMENT OF ISSUES

1.    Whether the district court erred in determining that Jacob Doe had

      not alleged a liberty or property interest.

2.    Whether Jacob Doe received all of the process he was due before VT

      suspended him.

## STATEMENT OF CASE

Jacob Doe ("Doe") was a tuition-paying student at Virginia Polytechnic Institute and State University ("Virginia Tech") whose life was forever changed after being wrongfully suspended and marked with a Title IX violation notation after false charges were brought against him by a female student, Jenna Roe ("Roe").[1] The Title IX process and corresponding sanctions transpired after Doe ended his relationship with Roe in December 2017. Shortly after Doe ended the relationship, Roe accused Doe of criminal assault and battery, and trespassing. The criminal charges were dropped in January 2018 after Roe admitted to the Montgomery County Commonwealth Attorney that she had repeatedly physically assaulted Doe. Around this same time, Virginia Tech began its Title IX investigation into Doe in response to Roe's allegations of wrongdoing.

The investigation was wrought with procedural flaws. For instance, the notice of investigation issued by Virginia Tech to Doe on December 19, 2017, contained no details as to the specific allegations or charges

---

[1] "Jacob Doe" and "Jenna Roe" are not the parties' true names. The district court had previously granted Jacob Doe's motion for pseudonymity. *See* JA46-47.

3

that were being investigated. Throughout the investigation of Roe's complaint, Deputy Title IX Coordinator Katie Polidoro met with and interviewed at least three of Roe's witnesses but did not meet with Doe's witnesses.[2] Moreover, Polidoro met with Roe at least four times to discuss the investigation and only met with Doe once to discuss the investigation.

Doe participated throughout the investigation despite having not been told what the charges were at the beginning of the investigation or throughout the investigation. When the investigation concluded on March 8, 2018, Doe had still not been informed of the specific charges being investigated. This continued when Polidoro issued an investigative report on March 23, 2018, which still did not inform Doe of the specific charges investigated or those being adjudicated against him.

Finally, on March 28, 2018, Doe was informed by Assistant Conduct Coordinator Maya Azar, that several charges were being adjudicated by Virginia Tech, including charges of sexual assault and domestic violence. The hearing was scheduled for April 4, 2018, approximately one week after Doe was first notified of the charges. Accordingly, he merely had

---

[2] After Doe filed a complaint against Roe, Polidoro interviewed at least one of Doe's witnesses as to his complaint against Roe.

one week to develop a defense to the quasi-criminal charges of sexual assault and domestic violence being levied against him.

Doe filed a Title IX complaint against Roe on April 2, 2018. On April 3, 2018 (less than 24 hours before the hearing), the hearing was postponed until May 21, 2018. During this time, Virginia Tech investigated Doe's complaint against Roe.

The hearing went forward on its rescheduled date, May 21, 2018. Two members of the Student Conduct staff, Kyle Rose and Ennis McCrery, acted as the hearing officers. During the hearing, Doe learned of even more allegations made against him: Roe testified that Doe prevented her from seeing family and friends as part of his pattern of misconduct. Thus, the new allegations were not investigated; not to mention given any meaningful opportunity to prepare or to respond.

Following the hearing, Doe was found "responsible" for domestic violence. He was suspended for one and a half years, which was functionally two academic years due to the timing of the suspension. As a result of the finding, Doe's transcript was marked with a record of domestic violence. He is forever marred by having to disclose—and

Virginia Tech disclosing—that he was found responsible for domestic violence. An undeserving scarlet letter he will never escape.

Doe timely appealed the wrongful finding. He raised several issues, including the inadequate notice he received as to the charges in the Title IX case as well as providing new information that directly contradicted Roe's allegations raised for the first time in the hearing.

The appeals officer, Angela Simmons, denied Doe's appeal. She found, among other things, Doe's impeachment evidence relating to Roe being able to see family and friends could not be considered on appeal because the evidence was not presented at the hearing. Further, Simmons found that Doe received adequate notice to the charges that were adjudicated at the hearing. Ultimately, she upheld the finding against Doe and the sanctions.

Accordingly, Doe sued Virginia Tech and the relevant administrators on March 19, 2019, for violations of the Due Process Clause of the United States and Virginia Constitutions, Title IX, and two state law claims. On March 19, 2020, under Fed. R. Civ. P. 12, the district court dismissed all of Doe's claims, except for his Title IX claim. The district court subsequently granted summary judgment to Virginia Tech

on Doe's Title IX claim. A final judgment was entered in favor of Defendants on August 12, 2022.

Doe filed his Notice of Appeal on September 12, 2022. He appeals the district court's dismissal of his due process claims, which merged into the final judgment for purposes of appeal. Fed. R. App. P. 3.

## SUMMARY OF ARGUMENT

The district court erred when it determined, as a matter of law, that Doe failed to allege a protected liberty or property interest to support his due process claim. Specifically, the district court erred when it held categorically that Doe had no liberty interest in his continued education at a public university. The district court incorporated in this case its holding in *Doe v. Alger*, 175 F. Supp. 3d 646 (W.D. Va. 2016), which misapplied the "stigma plus" test as articulated by the Supreme Court in *Paul v. Davis*, 424 U.S. 693, 708-711 (1976). The district court required that a plaintiff allege that the state violated a "statutory" right in order to allege a liberty interest protected by the Fourteenth Amendment. *Paul*, however, does not require that a plaintiff show that he had a "statutory" right protected by the state to allege a liberty interest, and it does not overrule the Supreme Court's holding in *Goss v. Lopez*, 419 U.S. 565, 575 (1975), that a suspension from school of 10 days or less implicates a student's liberty interest. The district court's holding to the contrary was error.

The district court also erred when it determined that Doe had not alleged a property interest in his continued education protected by the

Fourteenth Amendment. In relevant part, the district court erred in holding that Doe's failure to specifically plead that Virginia Tech only disciplines students for cause meant that he could not establish a property interest. First, Doe did plead allegations from which it could be reasonably inferred that Virginia Tech does not discipline students except for cause – *i.e.*, except for violations of its policies. Second, and relatedly, requiring accused student plaintiffs to plead in formulaic fashion that a defendant university does not discipline students except for violations of its policies would encourage the type of formulaic pleading admonished by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Because it did not hold that Doe had alleged a protected liberty or property interest, the district court did not reach the issue of whether Doe received all of the process he was due. He did not. Doe was deprived of notice and an opportunity to be heard when he was not informed of the charges until the investigation had concluded and when he was deprived of the ability to present evidence to impeach his accuser. *See Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 615-619 (E.D. Va. 2016).

Accordingly, this Court should reverse the district court by holding, at a minimum, that a public university student has a liberty and/or property interest in his continued education. If the Court exercises its discretion to determine whether Doe received the process he was due, it should decide that he was not so afforded.

## ARGUMENT

### I.    <u>Standard of Review</u>

This Court applies a *de novo* standard of review to a district court's grant of a motion to dismiss for failure to state a claim. *Benjamin v. Sparks*, 986 F.3d 332, 351 (4th Cir. 2021). Therefore, this Court must accept as true all of the factual allegations contained in the complaint." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011). To survive dismissal under Fed. R. Civ. P. 12(b)(6), "the complaint must contain 'enough *facts* to state a claim to relief that is plausible on its face.'" *Id.* (emphasis added), *citing Twombly*, 550 U.S. at 555. Crucially, "a formulaic recitation of the elements of a cause of action will not do"; rather, a complaint must contain just enough factual matter to "raise a right to relief above the speculative level." *Id.*

### II.    <u>Doe stated protected liberty and property interests.</u>

To state a procedural due process claim, plaintiff must allege, among other elements, that he possessed a protected liberty or property interest. *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 719 (E.D. Va. 2015), *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). Here, the district court began and ended its

11

analysis of Doe's procedural due process claim by concluding that he had failed to allege a protected liberty or property interest. For the following reasons, that conclusion was error.

### a. Doe alleged a protected liberty interest.

Decades ago, the Supreme Court recognized that, in the public education context, "The Due Process Clause . . . forbids arbitrary deprivations of liberty." *Goss*, 419 U.S. at 574. The Court held squarely that a 10-day suspension from high school based on charges of misconduct implicates a student's liberty interest in his education because "those charges could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment." *Id.* at 575. The Court explained this holding in a separate paragraph from its holding that the student's property interest was implicated because the state deprived him of a right to education protected by state statute. *Id.* at 574. The Court rejected the arguments from the State that a student had no liberty or property interest, writing that "it is apparent that the claimed right of the State to determine unilaterally and without process whether that misconduct has occurred immediately collides with the

requirements of the Constitution." *Id.* The Court concluded that a student's "liberty interest in [his] reputation" was implicated by the 10-day suspension. *Id.*

This holding was later modified—but not overruled—by the Court's decision in *Paul. Paul*, 424 U.S. at 695. In *Paul*, the Court considered whether a citizen's liberty interest in his reputation was implicated when the police department posted flyers around the city accusing him of being a shoplifter. *Id.* The Supreme Court ultimately concluded that no liberty interest was implicated because, although the citizen was stigmatized, the stigma was not associated with a concurrent change in his status that would likely foreclose other employment opportunities, such as a termination of employment. *Id.* at 709–10. This liberty interest test became known as the "stigma plus" test. *See, e.g., Doe v. Purdue Univ.*, 928 F.3d 652, 661–63 (7th Cir. 2019) (Barrett, J.) (holding that a suspended public university student satisfied the "stigma plus" test and alleged a liberty interest), *citing Paul*, 424 U.S. at 708–9, 712.

To allege a liberty interest under the "stigma plus" test, therefore, a plaintiff must allege that "a state actor has injured his reputation or otherwise imposed a reputational 'stigma' on him and must also have

been deprived of 'some more tangible interests.'" *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 722 (E.D. Va. 2015).

Admittedly, the Supreme Court in *Paul* did not distinguish between liberty and property interests in much of its analysis, which creates some confusion. *See Paul*, 424 U.S. at 710–11. Throughout Section III of the opinion, for example, the Court repeatedly refers to "liberty" and "property" together, and states generally that due process is implicated where the State "distinctly alter[s] or extinguishe[s]" a right previously protected or recognized by state law. *Id.* This section, therefore, would seem to support the view that a plaintiff has no protected liberty or property interest unless the State violates a right recognized by state statute. Further adding to the confusion, the Court elsewhere appeared to conflate the liberty and property interests discussed in *Goss*, that "while the Court noted that charges of misconduct could seriously damage the student's reputation, . . . it also took care to point out that Ohio law conferred a right upon all children to attend school." *Id.* at 710.

There is an important footnote in Section III, however, that states:

"Our discussion in Part III is limited to consideration of the procedural guarantees of the Due Process Clause and is not intended to describe those substantive limitations upon state

> action which may be encompassed within the concept of
> "liberty" expressed in the Fourteenth Amendment.

*Paul*, 424 U.S. at 710 n.5. This footnote expressly disclaims the view that a violation of a state statutory right is necessary to state a violation of a protected liberty interest. Such a violation may be sufficient, but it is not necessary.

Even if this footnote was not sufficiently clear on this point, the Court's discussion in Section II drives this point home. In Section II, the Court distinguished liberty and property interests. While property interests stem from "independent source such as state law rules or understandings," liberty interests may arise where the government, for example, defames an individual (the stigma) while refusing to rehire him (the plus). *Id.* at 709, *citing Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570, 577 (1972).

Also in this section, the Court reiterated that a liberty interest may be implicated not merely when the government defames an individual, but when the government terminates that individual as an employee in connection with the defamation. *Id.* at 710. Finally, at the end of Section II, the Court reaffirmed its holding in *Goss*, which as previously discussed, held that the state statutory right to education was relevant

to the student's property interest but did not contain any discussion of the statutory right with respect to the liberty interest. *Paul*, 424 U.S. at 710; *Goss*, 419 U.S. at 574–75. In sum, *Paul* does *not* hold that a state statutory right must be violated to state a violation of a protected liberty interest.

A 2012 case in this Court makes this point even clearer. *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308 (4th Cir. 2012). In *Shirvinski*, this Court considered whether a liberty interest was implicated where the Coast Guard defamatorily "requested" the plaintiff's removal from a project with one of its subcontractors. *Shirvinski*, 673 F.3d at 314. This Court explained that a liberty interest requires that the plaintiff suffer a "reputational injury [that] was accompanied by a state action that 'distinctly altered or extinguished' his legal status if he wants to succeed." *Id.* at 315, *citing Paul*, 424 U.S. at 711. This Court expounded that "in the context of public employment, this change in status occurs when the government acting as an employer discharges one of its employees." *Id.* Finally, this Court concluded that because the plaintiff was not a government employee—and therefore was not terminated from government employment—he had not suffered "a change in legal

status."[3] *Shirvinski*, 673 F.3d at 315. Notably, this Court did not hold that the plaintiff was required to show that he was deprived of a state statutory right; rather, termination from government employment would have qualified as the requisite "change in legal status."[4] *Id.*; *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 309 (4th Cir. 2006) (recognizing a liberty interest in a person's his reputation and choice of occupation).

---

[3] This Court noted as well that "diluting the requirement of a change in legal status would needlessly" conflict with the D.C. Circuit's liberty interest test. *Shirvinski*, 673 F.3d at 315. In the D.C. Circuit, in order to meet the *Paul* test, a government subcontractor plaintiff must show either that the government formally excluded her from present or future contracts, or that the government's action had the effect of "precluding [plaintiff] from pursuing her chosen career." *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994). Nowhere did the D.C. Circuit hold that a D.C. statutory right need be violated to state a violation of a liberty interest.

[4] The *Shirvinski* case originated in Virginia. *See Shirvinski v. U.S. Coast Guard*, No. 1:09-CV-896 AJT TRJ, 2010 WL 4279254 (E.D. Va. Oct. 25, 2010), *aff'd*, 673 F.3d 308 (4th Cir. 2012). As the district court noted, the plaintiff was an at-will employee. *Shirvinski v. U.S. Coast Guard*, No. 1:09-CV-896 AJT TRJ, 2010 WL 4279254, at *1 (E.D. Va. Oct. 25, 2010). Obviously, an at-will employee could not demonstrate that he was deprived of any state statutory right. It is telling, therefore, that this Court did not discuss the plaintiff's at-will employment as disqualifying a liberty interest in the first instance.

17

In the same way that loss of state employment changes a person's legal status, loss of state university enrollment changes a person's legal status. *See Purdue*, 928 F.3d at 662 ("Purdue formally determined that John was guilty of a sexual offense. That determination changed John's status: he went from a full-time student in good standing to one suspended for an academic year"); *see also*, *e.g.*, *Overdam v. Texas A&M Univ.*, 43 F.4th 522, 529 (5th Cir. 2022) ("Van Overdam alleges a cognizable liberty interest in seeking to restore his reputation and clear his student disciplinary record"). As then-Judge Barrett explained in *Purdue*, in this campus disciplinary context, it is not the defamatory rumors that cause the harm, it is the formal determination of guilt made by the university that both labels the student a sexual offender and actually forecloses enrollment or employment opportunities. *Purdue*, 928 F.3d at 662–63.

A district court within this Circuit similarly held that an accused student plaintiff alleged a liberty interest where "he was wrongly held responsible for sexual misconduct and that this stigmatizing label will impair his ability to seek further education or employment elsewhere." *Rector and Visitors of George Mason University*, 132 F. Supp. 3d at 724.

These rulings recognize the obvious reality: getting suspended or expelled from a public university for violations of a sexual misconduct policy causes both disastrous reputational harm and an actual change in the student's status because the student is no longer a student in good standing or a student at all.[5]

Here, despite the foregoing, the district court erroneously held that Doe failed to state a liberty interest because he did not allege that a statutory right had been violated. JA54-55. The district court did not engage in a full analysis of Doe's liberty interests; rather, it incorporated its prior holding—*Doe v. Alger*, 175 F. Supp. 3d 646, 658-661 (W.D. Va. 2016). JA54-55. As in *Alger*, the court determined that public university students do not have liberty interests in their education. JA55 ("for the same reasons set forth in *Alger*, the court concludes that Doe has not alleged a protected liberty interest").

---

[5] In fact, the "status change" in the education context may be even more severe than in the employment context. In the employment context, a terminated employee may seek other employment in his chosen career, despite how very difficult that may be after having to disclose the termination. In the education context, a suspended or expelled college student is effectively barred, categorically, from his chosen occupation because he may not be able to attain the required degree to even be able to apply to jobs in his chosen field.

In *Alger*, the district court erroneously held that "*Paul* instructs that there must be a statutory right that was altered or extinguished" to state a liberty interest. *Alger*, 174 F. Supp. 3d at 660. Of course, as discussed *supra*, *Paul* instructs no such thing. *Paul* instructs that a plaintiff must show "(i) the infliction by state officials of a 'stigma' to plaintiff's reputation and (ii) the deprivation of a legal right or status." *Rector and Visitors of George Mason University*, 132 F. Supp. 3d at 722, *citing Paul*, 424 U.S. at 710–11.

Here, Doe has done so. It is obvious that a finding of domestic violence imposes a stigma on Doe, and Doe alleged as such. JA31; *Ridpath*, 447 F.3d at 308 ("The type of communication that gives rise to a protected liberty interest implies the existence of serious character defects such as dishonesty or immorality") (internal quotations omitted). Doe also alleged a deprivation of a legal right or status: "he went from a full-time student in good standing to one suspended." *Purdue*, 928 F.3d at 662; *Overdam*, 43 F.4th at 529; *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) (suspension from public university implicates a liberty interest); *see also Doe v. Univ. of Arkansas - Fayetteville*, 974 F.3d 858 (8th Cir. 2020) (assuming accused student possessed a liberty

20

interest because defendant university did not dispute the point).
Therefore, Doe properly alleged a liberty interest.

The district court's holding that a "statutory" right need be
implicated to state a liberty interest also presents another problem in
that it "would render liberty interest claims irrelevant, completely
swallowed up by property interest claims." *Rector and Visitors of George
Mason University*, 132 F. Supp. 3d at 722. As discussed *infra*, a plaintiff
can typically show a property interest by pointing to a right protected by
state statute. *See*, *e.g*, *Goss*, 419 U.S. at 574. To require a plaintiff to state
a deprivation of a statutory right (*i.e.*, a property interest) in order to
state a liberty interest, would render liberty interests claims irrelevant.
The Constitution protects both "liberty" and "property." It would not list
both terms if one was fully encompassed by the other. Thus, this
conclusion cannot be correct. This point is buttressed by the fact that this
Court has indeed found liberty interests even where a plaintiff could not
show a property interest. *Rector and Visitors of George Mason
University*, 132 F. Supp. 3d at 722 n.10 (cataloguing cases).

In sum, the district court's opinion misapplies the "stigma plus" test
from *Paul* and would cause the swallowing of liberty interest claims by

property interest claims. As a result of its faulty reasoning, the district court erred when it determined that Doe had not alleged a liberty interest. This Court should reverse.

### b. Doe alleged a protected property interest.

The district court's error with respect to Doe's property interest is far more straightforward. The district court correctly noted at the outset that the Constitution cannot be the source of a property interest; rather, there must be a "legitimate claim of entitlement" deriving from another source, such as a state statute, regulation, contract, or policy. JA55, *citing Roth*, 408 U.S. at 577. As Doe did not allege a right arising from a state statute or regulation, Doe needed to adequately allege a right arising from a contract or a policy.[6] *Id.* He did so.

To allege a "legitimate claim of entitlement" to his education based on policy, an accused student plaintiff must point to a policy which provides a plausible objective basis for such entitlement. *Alger*, 175 F. Supp. 3d at 658. In *Alger*, the court found that the accused student

---

[6] While Doe proceeded on theories of legitimate claims of entitlement to rights sounding in an implied contract with Virginia Tech and reliance on Virginia Tech's policies, he appeals only the district court's finding as to the reliance on Virginia Tech's policies.

plaintiff had plausibly alleged a legitimate claim of entitlement when he alleged that the defendant university "has a system of expelling, suspending, or dismissing students only after a finding of cause." *Id.* In its reasoning, the district court cited the Supreme Court's opinion in *Perry v. Sindermann*, 408 U.S. 593, 599–600, 603 (1972), which held that a junior college professor had alleged a property interest sufficient at the pleading stage where he plausibly alleged a "de facto tenure program" where employees were not terminated except for cause. *Alger*, 175 F. Supp. 3d at 657, *citing Perry*, 408 U.S. at 599–600, 603.

Following *Perry*, the *Alger* court did not hold definitively that the student had any legitimate claim of entitlement, but merely found that the student's reliance on the university's practice of not expelling students arbitrarily was sufficient at the pleading stage. *Id.* The court stated that it would "give him the opportunity to prove the legitimacy of his claim to a property right 'in light of the policies and practices of the institution.'" *Id.* at 658, *citing Perry*, 408 U.S. at 603.

Subsequent to that decision, the university admitted that it has a practice of only disciplining students for cause, which vindicated the student's claim and precluded summary judgment. *See Doe v. Alger*, 228

23

F. Supp. 3d 713, 727–29 (W.D. Va. 2016) ("*Alger II*"). Therefore, in the *Alger* case, the district court correctly "accept[ed] all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor." *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Indeed, the court took as true at the pleading stage that there existed a policy or practice at the university of not disciplining students except for cause—which could support a property interest—and permitted the plaintiff to proceed to discovery to develop those facts more fully, which he did.

Here, Doe similarly asserted an expectation that if he continued to pay tuition and abide by Virginia Tech policies, he would continue to be enrolled, and he alleged that Virginia Tech had student conduct policies and disciplined him for a violation of those policies.[7] JA38. Taking those allegations as true, it is a reasonable inference that Virginia Tech did not have a policy of arbitrarily dismissing students for no reason. Indeed, the

---

[7] While this allegation was listed at paragraph 94 of the Complaint, within the Breach of Contract count, it was still a fact that was presented in the Complaint and it should have been considered by the district court. Instead, in its discussion of Doe's property interest, the district court only cited other portions of the Complaint that stated conclusions about Doe's property interests.

very point of having a student conduct code at all is to inform students of specific prohibited conduct, and if students do not commit the prohibited conduct, they can expect to remain students.

As the district court noted in *Alger II*, to take the opposite view would "allow a public institution to take a student's tuition and housing money and then expel him on the second day of classes for no reason whatsoever, and the student would not have any enforceable right to recourse." 228 F. Supp. 3d at 729 n.12. Taking his allegations as true, therefore, Doe had a reasonable expectation that he would remain a student if he paid tuition and did not violate Virginia Tech policies. Consequently, the district court should have "give[n] him the opportunity to prove the legitimacy of his claim to a property right 'in light of the policies and practices of the institution.'" *Alger*, 175 F. Supp. 3d at 658, *citing Perry*, 408 U.S. at 603. The district court erred when it did otherwise.

Further, requiring Doe to specifically state in near-verbatim fashion that Virginia Tech "had a system of expelling, suspending, or dismissing students only after a finding of cause," JA56, *citing Alger*, 175 F. Supp. 3d at 658, would require him to state his claim in "formulaic"

fashion in a manner admonished by the Supreme Court in *Twombly*. *See Twombly*, 550 U.S. at 555. The Supreme Court made clear that, to survive a motion to dismiss for failure to state a claim, a complaint must contain enough "factual allegations . . . to raise a right to relief above a speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* Certainly, taking as true the allegations that Virginia Tech maintained a sexual misconduct policy under which Doe was actually disciplined, and that Doe had an expectation that he would remain a student if he paid tuition and did not violate the school's policies, it is more than merely "speculative" that Virginia Tech would not have disciplined him except for cause. Because that is what it did; it disciplined Doe for a violation of its sexual misconduct policy. It disciplined him for cause.

For these reasons, Doe sufficiently alleged a property interest at the pleading stage, and this Court should reverse the district court's holding to the contrary.

III.  **Doe was not provided adequate notice and a meaningful opportunity to be heard.[8]**

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." *Henson v. Honor Comm. Of U. Va.*, 719 F.2d 69, 73–74 (4th Cir. 1983). Generally, in the academic setting, "disciplinary proceedings require more stringent procedural protection than academic evaluations" and universities enjoy less deference with disciplinary proceedings as compared to academic proceedings. *Id.*; *Purdue*, 928 F.3d at 663.

In *Henson*, this Court incorporated the Fifth Circuit's "minimum due process requirements" articulated in *Dixon v. Alabama State Bd. of Ed. Henson*, 719 F.3d at 74, *citing Dixon v. Alabama State Bd. of Ed.*, 294

---

[8] As this issue was not addressed by the district court, this Court has discretion to either address the question of whether Doe received the process he was due, or simply remand for the district court to consider the issue in the first instance. *See Washington Gas Light Co. v. Virginia Elec. & Power Co.*, 438 F.2d 248, 250 (4th Cir. 1971). To the extent this Court decides the issue, it should find that Doe was not given the process he was due.

F.2d 150, 159 (5th Cir. 1961). *Dixon* required that a student facing serious disciplinary charges receive notice of "the specific charges and grounds which, if proven, would justify expulsion" and a hearing in which the student is permitted to, among other things, "produce either oral testimony or written affidavits of witnesses in his behalf." *Dixon*, 294 F.2d at 158–59. *Dixon* further warned that to require more "might be detrimental to the college's educational atmosphere and impractical to carry out." *Id.*; *but see Goss*, 419 U.S. at 584 ("Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures"); *but see Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (due process requirements are "flexible" and context dependent).

The landscape has changed significantly since the days of *Dixon* and *Henson*. *See generally*, Samantha Harris & KC Johnson, *Campus Courts in Court: The Rise in Judicial Involvement in Campus Sexual Misconduct Adjudications*, 22 N.Y.U. J. LEGIS. & PUB. POL'Y 49 (2020). For example, the Fifth Circuit has recently abrogated *Dixon* and held that some form of real-time cross examination is required in this context.

*Walsh v. Hodge*, 975 F.3d 475, 485 (5th Cir. 2020),[9] *cert. denied*, 141 S. Ct. 1693 (2021). In *Walsh*, the Fifth Circuit balanced the *Mathews* factors[10] and determined that the need for the plaintiff to be able to question his accuser at a hearing outweighed any interest the university had in preserving resources or any risk of deterrence for victims to come forward. *Id.*; *see also Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) (due process in the campus disciplinary context requires real-time, adversarial cross examination). In other words, an accused has the right to question the credibility of his accuser that has been expanded significantly since *Dixon*.

---

[9]  *Walsh* also recognized that recent Title IX regulations require universities to provide live, adversarial cross examination and recognized that due process requirements on campus are "in flux." *Walsh*, 975 F.3d at 487, *citing Summary of Major Provisions of the Department of Education's Title IX Final Rule*, DEPARTMENT OF EDUCATION (May 13, 2020), page 7, https://www2.ed.gov/about/offices/list/ocr/docs/titleix-summary.pdf.

[10]  *Mathews* requires courts to balance (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Following *Dixon* and *Henson*, courts within this Circuit have already held that an accused student is entitled to notice of the "specific charges" against him. For example, the court in *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 615–19 (E.D. Va. 2016) ("*Rector & Visitors of George Mason Univ. II*") found that an accused student did not receive adequate notice where the initial notice of investigation did not list the "specific charges" at issue and subsequent notices—though more formal—did not give the plaintiff fair notice of the issues to be adjudicated at the hearing. *Rector & Visitors of George Mason Univ. II*, 149 F. Supp. 3d at 615–19. The court found that the failure to list the specific charges and the time frame to be investigated/adjudicated deprived the plaintiff of the ability to mount an appropriate defense, and thus the notice was constitutionally inadequate. *Id.*

Similarly, here, Doe was not provided with a notice at the beginning of the investigation that laid out the "specific charges" to be investigated and adjudicated. *Id.*, *citing Dixon*, 294 F.2d at 158; JA30. Virginia Tech's failure to issue such a notice until after the investigation into Roe's allegations had concluded deprived Doe of the opportunity to mount an

30

appropriate defense before a hearing. Balancing the *Mathews* factors, Virginia Tech would have suffered little if any inconvenience by providing adequate notice at the start of the investigation; by contrast, Doe was harshly prejudiced by not knowing what was being investigated throughout the critical stages of the investigation. *See Mathews*, 424 U.S. at 335. Accordingly, due process must require a pre-investigation notice of the charges to be investigated.[11]

Compounding the issue, Virginia Tech failed to allow Doe to question the credibility of his accuser after she made new allegations for the first time in the hearing (for which Doe was indisputably not on notice), which implicates his right to a meaningful opportunity to be heard. JA29. *See Rector & Visitors of George Mason Univ. II*, 149 F. Supp. 3d at 617 ("such a lack of notice cannot be divorced from the adequacy of plaintiff's opportunity to be heard"). Doe submitted evidence that specifically impeached Roe's statements at the hearing; yet, Virginia Tech disregarded the evidence without even considering it. JA29.

---

[11] The current Title IX regulations require notice of the specific charges to be investigated before any investigation begins. 34 C.F.R. §106.45(b)(2)(B). This Court should follow *Walsh* in recognizing that due process rights in this context are "in flux," *Walsh*, 975 F.3d at 487, and consider the Executive Branch's determination on the issue relevant.

Virginia Tech also failed to interview any of Doe's witnesses during the investigation into Roe's allegations. JA31. Such treatment falls short of even the *Dixon/Henson* standard that requires that an accused student have the right to "produce either oral testimony or written affidavits of witnesses in his behalf." *Dixon*, 294 F.2d at 158-159.

The failure of Virginia Tech to permit Doe to impeach his accuser after she made new allegations during the hearing also falls short of rights recognized more recently—that an accused student has a right to question his accuser's credibility that extends so far as to require live cross-examination. *See, e.g., Walsh*, 975 F.3d at 485; *Baum*, 903 F.3d at 582; *Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56 (1st Cir. 2019). If the right to question one's accuser requires live cross-examination, it certainly requires that a student have the simple ability to submit impeachment evidence. *See Doe v. Univ. of Connecticut*, No. 3:20CV92 (MPS), 2020 WL 406356, at *5 (D. Conn. Jan. 23, 2020) *citing Purdue*, 928 F.3d at 664 ("He must be given an adequate opportunity to present his defense both from the point of view of time and the use of witnesses and other evidence").

For these reasons, Doe sufficiently alleged a violation of due process when he alleged that he did not receive an adequate pre-investigation notice, was not able to present witnesses, and was not able to present impeachment evidence. This Court should so hold.

## CONCLUSION

Without recognizing a liberty or a property interest in public university education, public universities in this Circuit are free to unilaterally expel tuition paying students for no reason at all. This is repugnant to the Constitution. Accordingly, this Court should hold that public university students hold liberty and property interests in their education. Further, this Court should hold that Doe was not given all of the process he was due. Respectfully, this Court should reverse the district court.

## REQUEST FOR ORAL ARGUMENT

Appellant Jacob Doe respectfully requests oral argument be scheduled in this case because this case concerns vitally important issues of public education administration, including whether a public university student has a protected interest in his education.

Dated: November 8, 2022                 Respectfully submitted,

/s/ Benjamin North
Benjamin North
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
ben@binnall.com

*Attorney for Appellant Jacob Doe*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*6,333*] words.

[    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Century*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  <u>November 8, 2022</u>          <u>/s/ Benjamin North</u>
                                              *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 8th day of November, 2022, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel of record as registered CM/ECF users.

/s/ Benjamin North
*Counsel for Appellant*