RECORD NO. 22-1971

In The
# United States Court of Appeals
### For The Fourth Circuit

**JACOB DOE,**

*Plaintiff – Appellant*,

v.

**VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY; TIMOTHY DAVID SANDS**, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; **FRANK SHUSHOK, JR.**, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; **KATIE POLIDORO**, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; **ENNIS MCCRERY**, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; **KYLE ROSE**, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; **ROHSAAN SETTLE**, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; **KELLY OAKS**, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; **ANGELA SIMMONS**, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally,

*Defendants – Appellees*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA AT ROANOKE**

---

### REPLY BRIEF OF APPELLANT

---

**Benjamin F. North**
**BINNALL LAW GROUP**
**717 King Street, Suite 200**
**Alexandria, Virginia 22314**
**(703) 888-1943**

*Counsel for Appellant*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

ARGUMENT .............................................................................................................1

    I.     Appellees fail to offer compelling arguments for affirming the district court's liberty and property interest holdings ................................................................ 1

          a.    Appellees fail to offer compelling arguments for affirming the district court's liberty and property interest holdings ......................................................... 2

          b.    Appellees misunderstand *Sheppard's* property interest holding ........................................................... 4

    II.    Appellees' purported alternate grounds to affirm are unavailing ................................................................................. 5

          a.    Appellees' interest against pre-investigation notice of charges does not outweigh Doe's interests or the risk of erroneous deprivation .............................. 6

          b.    Doe alleged sufficient participation by at least some defendants for purposes of §1983 ........................ 8

CONCLUSION ....................................................................................................... 10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Chao v. Rivendell Woods, Inc.*,
    415 F.3d 342 (4th Cir. 2005) ...................................................................... 5

*Doe v. Alger*,
    175 F. Supp. 3d 646 (W.D. Va. 2016) ......................................................... 5, 9

*Doe v. Purdue Univ.*,
    928 F.3d 652 (7th Cir. 2019) ..................................................................... 2-3

*Doe v. Rector & Visitors of George Mason Univ.*,
    149 F. Supp. 3d 602 (E.D. Va. 2016) ............................................................ 7

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ................................................................................. 6, 7

*Morrissey v. Brewer*,
    408 U.S. 471 (1972) ...................................................................................... 6

*Sheppard v. Visitors of Virginia State Univ.*,
    993 F.3d 230 (4th Cir. 2021) ........................................................................ 4

*Shirvinski v. U.S. Coast Guard*,
    673 F.3d 308 (4th Cir. 2012) ................................................................ 2, 3, 4

*Timpson by & through Timpson v.*
*Anderson Cnty. Disabilities & Special Needs Bd.*,
    31 F.4th 238 (4th Cir. 2022) ...................................................................... 8-9

*Williamson v. Stirling*,
    912 F.3d 154 (4th Cir. 2018) ........................................................................ 8

*Willis v. Blevins*,
    966 F. Supp. 2d 646 (E.D. Va. 2013) .............................................. 10

# CONSTITUTIONAL PROVISION

U.S. CONST. amend. XIV ..................................................................... 1

# STATUTE

42 U.S.C. §1983 ....................................................................... 8, 9, 10

# REGULATION

34 C.F.R. §106.45 ................................................................................ 7

The district court made two narrow rulings in this case, both of which were legally erroneous. In arguing to the contrary, Appellees critically misunderstand Doe's arguments and the controlling law in this case. The arguments advanced in their brief do little to avoid reversal of the district court. Because the district court erred as a matter of law, this Court should reverse, recognizing a public university student's liberty or property interest in his continued education.

## ARGUMENT

### I. Appellees fail to offer compelling arguments for affirming the district court's liberty and property interest holdings.

The district court in this case made two threshold rulings relevant to Doe's due process claim: that he did not sufficiently allege a liberty or property interest protected by the Fourteenth Amendment. JA54-58. Both of these holdings were erroneous, as explained thoroughly in Doe's Opening Brief. ECF No. 27. In response, Appellees fail to advance arguments which would justify affirming the district court; namely, Appellees fail to demonstrate why a public university student's suspension from school resulting from a finding of domestic violence would not satisfy the "stigma-plus" test, and they fail to grapple with the argument that Doe, as a tuition-paying student, had a reasonable

1

expectation of continuing his education absent his committing a policy violation.

> a. Appellees misunderstand the controlling liberty interest authority or do not meaningfully respond to Doe's arguments.

As explained in Doe's opening brief, a plaintiff alleging a violation of a liberty interest in the Fourth Circuit must allege facts sufficient to satisfy the "stigma-plus" test, which requires "reputational injury [which] was accompanied by a state action that 'distinctly altered or extinguished' his legal status." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012). There can be no good faith dispute that Doe's reputation was harmed by the finding of domestic violence against him; therefore, the critical element in this case is whether Doe's "legal status" had been altered by state action, consistent with, among other things, this Court's prior holding in *Shirvinski*. Here, as explained in Doe's brief, his change in legal status occurred not simply as a result of the finding against him, but the fact that he was actually suspended from school. ECF No. 27, at 19. If the University had made a finding against Doe but did not impose any sanction, this might be a different case. But the University did impose a punishment, changing his status "from a full-time student in good standing to one suspended…" *Doe v. Purdue Univ.*,

2

928 F.3d 652, 662 (7th Cir. 2019). This is clearly analogous to this Court's prior holding in the employment context that "this change in status occurs when the government acting as an employer discharges one of its employees." *Shirvinski*, 673 F.3d at 315.

Of course, as explained in Doe's brief, this Court did not find that the plaintiff in *Shirvinski* had alleged the requisite change in legal status, because the plaintiff there "was neither an employee of nor in a direct contractual relationship with the [government]." Remarkably, despite conceding elsewhere that the plaintiff in *Shirvinski* "was not a public employee but rather engaged in private employment," ECF No. 28, at 9, Appellees argue that Doe's case is "no different than the plaintiff in *Shirvinski*." ECF No. 28, at 11. But this cannot be true. In keeping with the employment-education analogue, Doe was not a student at a private university, now complaining about a public university's defamatory statement about him. Unlike the plaintiff in *Shirvinski*, Doe was in a direct relationship with the government as its university student, and the public university actually imposed its own punishment, which did two things: it labeled Doe a perpetrator of domestic violence (the stigma) and suspended him from school (the plus). In short, contrary to Appellees'

3

contentions, the plaintiff's allegations in *Shirvinski* are quite different than Doe's.

### b. Appellees misunderstand *Sheppard*'s property interest holding.

After conceding that a property interest can be created by "contracts, regulations, or *policies*," ECF No. 28, at 18, Appellees criticize Doe for failing to cite this Court's opinion in *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230 (4th Cir. 2021). In *Sheppard*, this Court reiterated the unremarkable contention that "violations of school procedures are insufficient by themselves to implicate the interests that trigger a federal due process claim." *Sheppard*, 993 F.3d at 239. Of course, nowhere did Doe claim that the University violating its own procedures, by itself, creates either a liberty or property interest. Rather, as explained *supra* and in Doe's Opening Brief, it was the government's labeling of Doe as a perpetrator of domestic violence combined with the actual separation from school that created the liberty interest. Similarly, and unlike *Sheppard*, it was his legitimate expectation of continued enrollment if he paid tuition and abided by conduct policies that created the property interest; in other words, his expectation to remain a student in the context of the "policies and practices of the institution" could

4

support a property interest. *Doe v. Alger*, 175 F. Supp. 3d 646, 658 (W.D. Va. 2016). It was eminently reasonable for Doe to believe that if he paid tuition and abided by all University conduct policies, he would not be arbitrarily disciplined without cause, and it is flatly unreasonable for the University to claim that such students should fairly expect to be arbitrarily disciplined or disenrolled without cause.

Drawing all reasonable inferences in Doe's favor, as the district court was required to do at the pleading stage, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005), it is at least plausible under these facts that Doe had a reasonable expectation of continued enrollment. He therefore alleged a property interest. Because Doe's argument is not that the violation of the University policies themselves begets a property interest, Appellees' argument on that point is unavailing.

## II. Appellees' purported alternate grounds to affirm are unavailing.

While Doe would be satisfied with a narrow holding from this Court reversing the district court's liberty and property interest holdings, it is worth responding to Appellees' purported alternate grounds for this Court to affirm the district court.

5

> a. Appellees' interest against pre-investigation notice of charges does not outweigh Doe's interests or the risk of erroneous deprivation.

All parties agree that due process is a "flexible inquiry" that depends on the particular situation at hand. ECF No. 28, at 24, *citing Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To determine what procedural protections a particular situation demands, courts are obliged to balance the factors laid out by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. Here, Appellees argue, among other things, that the University's procedure of only informing Doe that "some sort of complaint" was filed against him was sufficient as pre-investigation notice. ECF No. 28, at 27. Though Appellees do not cite *Mathews*, they describe their interests in this procedure as allowing them to, in some cases, investigate an allegation without eventually decided to levy

charges against the accused. ECF No. 28, at 26. Appellees further argue that "cannot give notice of the exact charges against Doe without first conducting an investigation into his accuser's allegations." *Id.*, at 24.

The first and most obvious retort to this argument is that Appellees now do just that: give pre-investigation notice of charges against the accused. They are obligated to do so for all current Title IX cases under 34 C.F.R. §106.45. Appellees cannot claim that they "cannot" give pre-investigation notice of charges against the accused when this is exactly what they do now.

Second, and relevant to the *Mathews* factors, even accepting the government's interests as legitimate, they do not outweigh the accused's interest in mounting an adequate defense, or the risk of erroneous deprivation. Doe has a strong interest in knowing what exactly was being investigated when he participated in the investigation: "the scope and content of the defense plaintiff mounted to the charges against him may have been different had plaintiff had better notice." *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 617 (E.D. Va. 2016). Relatedly, as a matter of common sense, refusing to provide Doe the details of the charges at the beginning of the investigation would result

7

in him having less of an ability to respond to the allegations being made against him, raising the risk of erroneous deprivation. Especially considering that Appellees regularly give pre-investigation notice now, seemingly with little difficulty, it cannot be said that the government's interest against pre-investigation notice outweighs Doe's interests.[1]

### b. Doe alleged sufficient participation by at least some defendants for purposes of §1983.

Individual liability is proper under §1983 if "the official charged acted personally in the deprivation of the plaintiff's rights." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018). Doe agrees with Appellees that supervisors may be liable under §1983 if "the supervisor demonstrated deliberate indifference to, or tacit authorization of, the conduct of his subordinates." ECF No. 28, at 29, *citing Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31

---

[1] Relatedly, Appellees argue that Doe's due process rights were not violated when Roe made new allegations at the hearing (for which there was obviously no notice) and Doe was prevented from submitting evidence in response during the appeal. ECF No. 28, at 28. Appellees argue that Doe raised this issue for the first time on appeal. Not so. Among other things, paragraph 49 of the Complaint states that Doe was prevented from submitting rebuttal evidence to Roe's allegations that he prevented her from seeing family and friends. He learned of these allegations during the hearing. JA29.

8

F.4th 238, 257 (4th Cir. 2022). In the Title IX context, courts have imposed §1983 liability on the "ultimate decisionmakers" in the underlying university Title IX matter. *See, e.g.*, *Alger*, 175 F. Supp. 3d at 662.

Here, Doe alleged at least that Polidoro, Sands, Simmons, McCrery, and Rose acted personally in the deprivation of his rights. First, McCrery, Rose, and Simmons were the "ultimate decisionmakers" in the case. McCrery and Rose rendered the initial decision against Doe, and Simmons affirmed the decision in the appeal. Further, Polidoro, as the Investigator and the University's Title IX Coordinator, was a trained professional who was chiefly responsible for the enforcement of Title IX on campus. It is at least plausible that Polidoro retained the authority, therefore, to remedy any defects in the Title IX process; her failure to do so plausibly constitutes "tacit authorization" of the conduct of her subordinates. *Timpson*, 31 F.4th at 257. Similarly, Sands was the president of the University, and the official with the ultimate decision-making authority on all matters at the University. He therefore retained (and still retains) the authority to remedy the procedural deficiencies in Doe's case. Each of these defendants either personally participated in the

9

deprivation of Doe's due process rights, or tacitly authorized the deprivations by virtue of their authority and inaction. For these reasons, Doe has stated viable §1983 claims against them.[2]

## CONCLUSION

Appellees fail to assert arguments which would justify affirming the district court. This Court should not grant public universities the authority to unilaterally dismiss or suspend students without regard to their interests. This Court should recognize a public university student's liberty and property interests in their public education. This Court should reverse the district court.

---

[2] Appellees also urge this Court to consider the issue of qualified immunity for the first time on appeal. Since the issue of qualified immunity necessarily turns on, in part, to what extent Appellees knew or would have known their actions to violate the Constitution, this issue should be resolved for the first time by the district court, not by the Court of Appeals. *See Willis v. Blevins*, 966 F. Supp. 2d 646, 652 (E.D. Va. 2013) (while a defendant may raise the defense of qualified immunity at the motion to dismiss or summary judgment stages, it may be "peculiarly well-suited for resolution at the summary judgment stage").

10

Respectfully submitted,

/s/ Benjamin North
Benjamin North
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
ben@binnall.com

*Counsel for Appellant*

11

# CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   [ X ] this brief contains [2,066] words.

   [　] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief complies with the typeface and type style requirements because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Century*]; *or*

   [　] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: December 29, 2022　　　　　/s/ Benjamin North
　　　　　　　　　　　　　　　　　　*Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 29th day of December, 2022, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel of record as registered CM/ECF users.

/s/ Benjamin North
*Counsel for Appellant*